IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-mj-15 |
| v. | : | 18 U.S.C. § 641 |
| | : | 40 U.S.C. § 5104(e)(2) |
| DANIEL HARRINGTON, | : | (G) |
| Defendant. | : | |

**STATEMENT OF OFFENSE**

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, DANIEL HARRINGTON, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752, due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 p.m., individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 p.m., members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. HARRINGTON traveled from Independence, Kentucky, to Washington, D.C., to attend the "Stop the Steal" rally at the Ellipse on January 6, 2021.

9. From the rally, HARRINGTON marched with the crowd to the Capitol and entered Capitol grounds from the west.

10. HARRINGTON climbed the Upper West Terrace stairs on Capitol grounds at approximately 2:12 p.m. While on the stairs, he stopped for about a minute and a half to assist other rioters who were scaling the wall, as captured in Image 1.



*Image 1: HARRINGTON on the Upper West Terrace stairs assisting other rioters who were scaling the wall.*

11.     HARRINGTON entered the Capitol building via the Senate Wing Door at approximately 2:16:32 p.m., as captured in Image 2.



*Image 2: HARRINGTON entering the Capitol building via the Senate Wing Door at 2:16:32 p.m.*

12.     HARRINGTON willfully and knowingly demonstrated and paraded around the Capitol building.

13. HARRINGTON entered the Senators' Spouse's Lounge at 2:16:57 p.m., as captured in Image 3.



*Image 3: HARRINGTON inside the Senators' Spouse's Lounge at approximately 2:16:57 p.m.*

14. At approximately 2:27:35 p.m., HARRINGTON entered the Rotunda, as captured in Image 4, and was there for approximately a minute and a half.



*Image 4: HARRINGTON inside the Rotunda at approximately 2:27:40 p.m.*

15. HARRINGTON exited the Rotunda at approximately 2:29:06 p.m. and walked down the hallway with the suite of offices of the Speaker of the House. At approximately 2:31:43 p.m., he stopped at a desk in the hallway, took a stapler and a tape dispenser from on top of the desk, as captured in Image 5, and put them in his pockets.



*Image 5: HARRINGTON taking a stapler (inside yellow box in HARRINGTON'S right hand) and tape dispenser (inside yellow box in HARRINGTON's left hand) from a desk in the hallway of the Speaker's suite at approximately 2:31:44 p.m.*

16. A few seconds later, HARRINGTON grabbed a pair of scissors that was on top of the desk and pocketed that as well.

17. HARRINGTON then opened a drawer in the desk and removed coasters, as captured in Image 6. He threw one at a rioter coming down the hall toward him and took one.



*Image 6: HARRINGTON holding coasters (yellow) he removed from a drawer of a desk in the hallway of the Speaker's suite at approximately 2:32:09 p.m.*

18. All of the items on and inside of the desk pictured in the images above were property of the United States with some value.

19. At approximately 2:32:42 p.m., HARRINGTON entered one of the rooms in the Speaker's suite. HARRINGTON knew that he was entering the Speaker's suite. He exited about four minutes later, at approximately 2:37:01 p.m.

20. When HARRINGTON exited the Speaker's suite, law enforcement officers approached him at approximately 2:37:41 p.m., and pointed him in a direction away from the suite, as captured in Image 7.



*Image 7: Law enforcement officers pointing HARRINGTON in a direction away from the Pelosi suite, at approximately 2:37:41 p.m.*

21. HARRINGTON initially walked in the direction in which the officers were pointing, but returned a few seconds later, and re-entered a room in the Speaker's suite, as captured in Image 8.



*Image 8: Capitol building surveillance capturing HARRINGTON re-entering a room in the Speaker's suite at approximately 2:38:17 p.m.*

22. HARRINGTON exited the Speaker's suite a few seconds later and walked down the hall toward the Rotunda. At approximately 2:39:50 p.m., HARRINGTON re-entered the Rotunda, and was there for approximately three minutes.

23. After exiting the Rotunda, HARRINGTON entered Statuary Hall at approximately 2:42:18 p.m. After about two minutes, he turned around and went back to the Rotunda.

24. HARRINGTON was inside the Rotunda this third time for less than one minute. At approximately 2:49:16 p.m., HARRINGTON re-entered the Speaker's suite. HARRINGTON was inside of the Speaker's suite this third time for approximately a minute and a half. Image 9 captures him inside the suite.



*Image 9: HARRINGTON inside the Speaker's suite at approximately 2:49:30 p.m.*

25. HARRINGTON exited the Speaker's suite at approximately 2:50:47 p.m. and re-entered the Rotunda. Harrington stayed in the Rotunda this fourth time for approximately six minutes.

26. HARRINGTON exited the Rotunda at approximately 2:57:00 p.m. He exited the Capitol building through the Rotunda Door at approximately 2:58:00 p.m., as captured in Image 10.



*Image 10: HARRINGTON exiting the Capitol at approximately 2:58:00 p.m.*

27. HARRINGTON was inside the Capitol building for approximately forty-two minutes.

28. HARRINGTON disposed of the stapler, tape dispenser, pair of scissors, and coasters on January 6, 2021, and is no longer in possession of them.

***Elements of the Offenses***

29. The parties agree that Theft of Government Property, 18 U.S.C. § 641, requires the following elements:

    a. First, the defendant knowingly stole, took, embezzled, purloined, or converted to his own use a stapler, a tape dispenser, a pair of scissors, and coasters.

    b. Second, the stolen items were property of some value belonging to the United States or any of its departments or agencies.

    c. Third, the defendant intended to deprive, without right, the United States government of the use or benefit of the stolen items.

30. The parties agree that Parading, Demonstrating, or Picketing in a Capitol Building, 40 U.S.C. § 5104(e)(2)(G), requires the following elements:

    a. First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

    b. Second, the defendant acted willfully and knowingly.

### *Defendant's Acknowledgments*

31. The defendant knowingly and voluntarily admits to all the elements as set forth above.

Respectfully submitted,

MATTHEW M. GRAVES  
United States Attorney  
D.C. Bar No. 481052

By:    */s/ Carolina Nevin*  
CAROLINA NEVIN  
Assistant United States Attorney  
District of Columbia  
NY Bar No. 5226121  
601 D Street, N.W.  
Washington, D.C. 20530  
(202) 803-1612  
carolina.nevin@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, DANIEL HARRINGTON, have read this Statement of the Offense and have discussed it with my attorney, Christopher D. Wiest. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4/18/24

_____
DANIEL HARRINGTON
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I, CHRISTOPHER D. WIEST, have read this Statement of the Offense and have reviewed it with my client, Daniel Harrington, fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/18/24

_____
CHRISTOPHER D. WIEST
Attorney for Defendant